THE SALLIE McDEVITT *v.* THE J. W. PAXSON.[1]

(*Circuit Court, E. D. Pennsylvania.* January 18, 1887.)

COLLISION—NEGLIGENCE.

> The owners of the respondent hired the libelant to carry a cargo of sand from their wharf, on the Rancocas creek, New Jersey, to Baltimore. They sent their own tug to tow the libelant in and out of the creek. The creek is sinuous, and difficult of navigation. The channel, water, and obstructions were well known to the respondent, but not to the libelant. While the respondent was towing the libelant out of the creek, the libelant ran into an obstruction, and soon after sunk. *Held*, that the movements of the libelant were legally and actually under the control of the respondent; that it was the respondent's duty to conduct the libelant so as to keep her clear of obstructions; and that, in failing to do this, the respondent was negligent.

[1] Reported by C. Berkeley Taylor, Esq., of the Philadelphia bar.

In Admiralty.

Appeal from district court.    See 24 Fed. Rep. 302.

*H. R. Edmunds,* for libelant.

*Flanders & Pugh,* for respondent.

McKENNAN, J.    This case involves and turns upon a single question of fact, viz., was the respondent guilty of negligence in the performance of the duty which he undertook to perform in reference to the libelant, whereby the injury complained of was caused?    The barge Sallie Mc-Devitt was hired about the fifteenth of November, 1882, by the owners of the steam-tug J. W. Paxson, to carry a cargo of sand from their wharf, in Rancocas creek, New Jersey, to Baltimore, they furnishing their own tug to do the towing in and out of said creek.

The barge proceded to the place of loading, and the cargo was put on board of her.    Rancocas creek is sinuous, and somewhat difficult of navigation, but its channel and water, and the obstructions in it, while the libelant was not familiar with them, was specially well known to the respondent.    The McDevitt was taken in tow by the Paxson at the end of a hawser 40 to 60 feet long, and the tug had in tow another barge, the Murray Manville, which was attached along-side of her; the McDevitt drawing about six feet and one-half, and the Manville about five and a half feet.    Just below a sharp bend in the creek, where the channel is only about 30 to 35 feet wide, a sunken wreck had remained for 25 years, which was well known to the respondent.    It inclines from the shore, and extends to the edge of the channel, and over it the water flows about three feet in depth.    At this point the collision occurred, the libelant running afoul of the sunken wreck, knocking a hole in her bottom in her port bow, and causing her to sink a few miles below.    The tug was running under one bell, about two miles an hour, at the time, and the barge was steering so as to head between the tug and the Manville.    The movements of the barge were, legally and actually, under the control of the tug, and she was therefore bound to conduct her so as to keep her clear of an obstruction with the existence and location of which she was perfectly familiar.    This was altogether practicable, and this obligation she did not discharge.    She assumed such a place in the channel as to push the barge along-side of her onto the obstruction, and to bring the stern tow, which drew more water than the Manville, directly in contact with it.    This was negligence, and caused the injury.

The allegation of the respondent that the McDevitt was not steered so as to keep directly in the wake of the tug is against the weight of the evidence, as is also the hypothesis that, just before the collision, the McDevitt steered to port, and then to starboard, by which she was brought into contact with the obstruction, and that this was caused by the unskillful steering of the McDevitt.

Upon the whole, I am satisfied the decree of the district court was right, and a decree will therefore be prepared and entered in this court for the sum awarded in that court to the libelants, with costs.